## LOUISVILLE & NASHVILLE R. Co. *v.* D. W. SANDERS, ET AL.
### SAME *v.* WADE.

**Damages—Vindictive Damages.**

Where the shippers of live stock, under the rules of the railroad company, are only entitled to passes for one attendant for each two cars of live stock shipped, but who were ignorant of such rule, and are given passes by the agent of the company for a greater number of attendants than allowed by such rule, which are not recognized by the conductor of the company's train, who without rudeness or force requires such extra passengers to get off the train, the company is liable to them for their actual damages caused by being put off, but the company is not liable for vindictive damages.

APPEAL FROM SIMPSON CIRCUIT COURT.

October 12, 1875.

Opinion by Judge Pryor:

These two cases, involving the same questions, will be considered together.

There is no evidence in either of the records authorizing the jury to give vindictive damages, or upon which an instruction was proper requiring such a finding. It is evident that the agent of the appellant at Franklin violated the rules of the company in permitting each of the appellees to carry with them, free of charge, an additional passenger on the freight train transporting their stock. The evidence conduces to show that the conductor of the freight train, on which these appellees were passengers, when attempting to enforce the regulations of the company in requiring the extra passengers to get off the train or pay, believed he was acting in the discharge of his duty to his employers. It does not appear that he entertained any malice or ill will toward either of the appellees, or that he had any cause for doing them an intentional injury. He was positive in the assertion that they, or the parties with them, must leave the cars or pay the usual fare; and the appellees were equally as firm in their determination to ride free of charge, by reason of the pass given them by the company's agent at Franklin.

Such trains are not carriers of passengers, and when the conductor found those upon the train who were there as passengers, or at least in violation of the rules of the company, it was not only his privilege, but his duty, to know by what authority they claimed the right to travel on his train. There was no abusive or insulting language used, or physical force resorted to, in order to remove appellees from the train; but the latter, concluding either that they had no right to be upon the train, or that they would leave the cars and look to the law for redress, left the train, and shortly after instituted these actions. Some of the witnesses state that the conductor appeared in the car where the appellees were, accompanied by two or more of the hands on the road; but it also appears that this was the car in which they remained when not on duty; and besides, there is no testimony showing that they took any part in the dispute between the conductor and appellees.

The facts indicate clearly that the conductor, in good faith and without any malice or desire to injure appellees, announced to them that they must leave the car or compensate the company for carry-

ing them; and on the other hand, it is equally as certain that the appellees believed they had the right to pass over the road by reason of the pass or ticket issued to them by the company's agent. This freight agent at Franklin had given them what is denominated a free pass or ticket to go with their stock on the freight train to Louisville, and not only so, but to take with them each an assistant. By the regulations of the company, one person only is entitled to go with two cars of stock, and two with three cars, etc. These parties had only two cars of stock each, and had no right to an extra hand. They, however, were not in fault, unless they knew when they accepted this free ticket that the agent had no authority to give it. The party signing the pass was the general freight agent of the appellant at Franklin, the point from which the stock was shipped, and the present litigation is to be attributed to his dereliction of duty in disregarding the rules of the company. He had full authority to make contracts for the transportation of live stock, and by the regulations of the company, the owners of stock, or their agents, were permitted to go upon these freight trains, but not more than one person with two cars.

As between the company and the agent, these rules must govern, but as to third parties who contract with this general agent within the scope of his authority, or in regard to that character of business he was authorized to execute or transact for the company, the fact that he had disregarded its rules and regulations in the transaction of this business, will not shield the company from the claims of those who, in good faith, have trusted the agent in making contracts with him about matters within the scope of his employment. Although the prices for freight may be regulated and fixed by the company, as well as the number of hands the owner is entitled to have on the trains with his stock, still, if the agent who had been invested with the authority to make these contracts should agree to transport live stock or other freight for a less price than authorized by the company, or should permit more than one person to accompany two cars of stock, it is too late, after the stock and its owners are upon the trains and the contract of the carrier being executed, for the company to say that the agent with whom the parties contracted had no authority to make such a contract, without showing that those dealing with the agent knew of his bad faith toward the company. In the absence of this knowledge, the agent, so far as his acts are to affect the parties, must be regarded as vested with the right to bind his principal with reference to his, the duties that the

agent must necessarily discharge by reason of his employment: "The principal is bound by all the acts of his agent, within the scope of the authority which he holds him out to the world to possess, although he may have given him more limited private instructions unknown to the persons dealing with him." Story on Agency, pp. 153-154, and note.

The only question for the jury to determine on the facts of this case in order to make the appellant liable, is, Did the appellees know when they made this contract with the appellant's agent at Franklin, that he was violating the rules of the company in permitting two persons to go upon the cars with stock instead of one. There is no question but what such an agreement or contract was made with the agent, and that in making it he transcended his authority and disregarded the rules of the company. If the appellees were ignorant of the rules of the company, having made the contract in good faith, they are entitled to recover damages by way of compensation, and nothing more. This is no case for punitive damages. Although the fault is to be attributed to appellant's agent, there is neither malice, oppression or such aggravating circumstances connected with this case, as to require punishment to be inflicted upon appellant in the way of damages. One of appellant's agents had contracted with the appellees for the passage of the latter and their employes from Franklin to Louisville, and another agent of the company, acting in good faith and for the reason that the contract of the first agent was in direct violation of the rules of the company, refused to carry them; and upon this refusal, and the declaration that they or those in their employ must get off the train or pay, the appellees left the cars.

Although this case, as made out, may be regarded as a tort, there is really but little difference, so far as the question of damages is concerned, between the action as instituted and an action on the contract for failing to carry the appellees to Louisville, as the company had agreed to do by its agent. All that the appellees are entitled to recover is for the actual injuries sustained. "There are many cases of tort where no question of fraud, malice or oppression intervenes, and in these cases the measure of compensation is a matter of law. In actions of tort, where there has been no wilful injury, the plaintiff can only recover the damages necessarily resulting from the act complained of." The rule is, that where gross fraud, malice or oppression appears, the jury are not bound to adhere to the strict line of compensation, but may, by a severe verdict,

at once impose a punishment on the defendant and hold up an example to the community. Sedgwick on the Measure of Damages, pages 475, 476 and 477 and notes annexed. If this was not the principle by which this case is to be determined, the question of interest on the part of the agent charged with the commission of the wrong, must necessarily tend to mitigate the damages. He acted in the consistent discharge of his duty to his employes, and inflicted no personal violence upon either of the appellees, nor did anything else than to inform them in a positive manner that the regulations of the company must be obeyed.

A verdict of $2,000, in such a state of case, cannot be sustained; but on the contrary, the appellees must be confined in their recovery to compensation, as the facts now appear. The loss of time they sustained, as well as the extra expense incurred, if any, by having to go upon other trains, may be considered in estimating the damages. The evidence shows that they left the train at or near a depot where they found a passenger train, upon which they took passage for Louisville. It was improper to permit testimony to be introduced as to the condition of the cattle, there being no such claim alleged in their petition. Most of the instructions were given upon the idea that the appellees were entitled to recover punitive damages, and were, therefore, erroneous. If the freight agent of the company at Franklin gave to the appellees and those with them a pass to go with appellees' cattle free of charge, and appellees were ignorant of the fact that the agent was violating the rules of the company, they are entitled to recover the damages to be confined alone to compensation. It is admitted or shown by appellant's own proof that the agent at Franklin was the general freight agent of the company at that place, and that he signed the permit or pass by virtue of which these appellees undertook to ride upon appellant's cars. The two judgments are *reversed,* and cause remanded with directions to award the appellant a new trial, and for further proceedings consistent with this opinion.

R. Rodes, Russell Hanston, for appellant.
W. P. D. Bush, for appellees.